ORR, *Appellant,*
*v.*
CIVIL SERVICE BOARD et al, *Respondents.*
(No. 419-534, CA 6774)
567 P2d 1076

Roscoe C. Nelson, Jr., Portland, argued the cause and filed the brief for appellant.

Richard A. Braman, Senior Deputy City Attorney, Portland, argued the cause for respondents. With him on the brief was Robert L. Hurtig, Acting City Attorney, Portland.

Before Schwab, Chief Judge, and Thornton and Johnson, Judges.

JOHNSON, J.

## JOHNSON, J.

Petitioner appeals the trial court's dismissal of a writ of review contesting his discharge from employment as a Portland police officer. He contends his continued employment was a constitutionally protected property interest, and he was denied due process under the procedures followed by the city in terminating his employment.

On May 5, 1975, petitioner was interviewed by the Internal Affairs Division (IAD) of the Portland Police Bureau concerning his dealings with a James Liming. Petitioner volunteered the answers given after being advised that he had a right to have counsel present and that he did not have to answer any or all the questions posed to him. Based upon the interviews IAD prepared a summary charging petitioner with four violations of the Portland Police Manual of Rules and Regulations.[1] On May 22, 1975, petitioner was advised by the chief of police in writing of the charges

---

[1] Petitioner was charged with violations of rules 2.100, 2.150, 2.156 and 2.162 which provide as follows:

"2.100 Standard of Conduct. Every member of the Bureau of Police will strive toward the highest professional standard of conduct. The member is required to obey strictly, and to execute promptly, the orders of his superior officers, and to conduct himself in the discharge of his duties and his relations with the public, and with other members of the Bureau, as to bring about the most efficient performance of the duties required of the Bureau. Members shall conduct their private and professional lives in such a manner as to avoid bringing discredit upon themselves or the Bureau.

"2.150 Gifts. No member shall under any pretense whatsoever receive or share in any present, gift or fee or emolument for public service other than the regular salary and pay, except by the consent of the Council and the Chief of Police, publicly given.

"2.156 Not to Inform Wrongdoers. A member shall not give information which may enable any person to avoid arrest or punishment, or to conceal or dispose of goods, money or other valuable things stolen or otherwise unlawfully obtained.

"2.162 Official Files Not to be Removed. Members shall not remove, make copies of, or take information from any records, cards, reports, letters, documents, recording tapes, pictures or other official files, from any office maintained by the Bureau for their custody, except by process of law, or as directed by the Chief of Police. Members shall at all times observe and conform strictly to this rule."

against him, the possible sanctions and that a hearing was set for the next day. At the hearing petitioner appeared with counsel and presented testimony. The city did not put on any testimony but petitioner was supplied with a copy of the IAD summary.[2] The hearing in great part consisted of a colloquy between the chief and petitioner wherein petitioner answered questions concerning specific items in the summary. Although petitioner contested some of the evaluations, he admitted that he had received without consideration certain items from Liming,[3] that he had provided Liming with CRISS information and divulged the name of a police informer. Following the hearing petitioner was notified by the mayor that he was discharged on account of three of the violations charged by IAD.[4] He then appealed to the Civil Service Board under City Charter Section 4-112.[5] The Board

---

[2] It is not clear from the record whether petitioner was also supplied with a transcript of his interviews with the Internal Affairs Division, although the chief of police had these interviews in his possession at the time of the hearing.

[3] The Civil Service Board of the City of Portland made the following finding:

"* * * The board takes notice of the fact that Mr. Liming has pleaded guilty, in the Circuit Court for Multnomah County, to charges of unlawfully receiving and concealing 6 portable cassette tape recorders and 6 portable radio frequency scanners."

[4] The alleged violation of Rule 2.162 was apparently dismissed.

[5] City Charter Section 4-112 provides:

"No employe in the classified service who shall have been permanently appointed under the provisions of this chapter shall be removed or discharged, or in the case of the members or officers of the bureau of police, demoted, except for cause, a written statement of which in general terms shall be served upon him and a duplicate filed with the board. Such removal or discharge may be made without any trial or hearing. In the bureau of police removal, discharge or demotion may be made only after a hearing before the mayor, chief of police, or a discipline committee of superior officers appointed as may be provided by ordinance, said hearing to be based on written charges filed by the mayor, chief of police, inspector of police, or other superior officer of the bureau of police. Any employe so removed or demoted may within ten days from his removal or demotion file with the board a written demand for investigation. If such demand shall allege, or, if it shall otherwise appear to the board that the discharge or removal, and in the

affirmed the Mayor's decision "as made in good faith for the purpose of improving the public service."

 Petitioner's contention is that he was denied a full-scale evidentiary hearing because of the limited scope of the civil service board hearing under the city charter. Since petitioner admitted the relevant facts in the hearing before the chief of police, a full scale adversary hearing would have served no useful purpose and was not required by due process.[6] *Codd v. Velger,* 429 US 624, 97 S Ct 882, 51 L Ed 2d 92 (1977). Likewise there was no denial of the right of confrontation at the hearing before the chief of police. Petitioner argues he should have been allowed the right to cross examine his accusers, i.e., the interviewing officers from IAD. The evidence against petitioner was his own admissions, not any testimony of the interviewing officers. In light of these admissions, it is also unnecessary to address petitioner's contention that the hearing before the chief of police lacked impartiality.

---

case of the bureau of police, demotion, was for political or religious reasons, or was not in good faith, for the purpose of improving the public service, the matter shall forthwith be investigated by or before the board, or by or before some officer or board appointed by the board to conduct such investigation. The investigation shall be confined solely to the determination of the question of whether such removal or discharge, or, in the case of the bureau of police, demotion, was or was not for political or religious reasons, or was or was not made in good faith for the purpose of improving the public service. The burden of proof shall be upon the discharged employe. On such grounds the board may find that the employe is entitled to reinstatement upon such terms or conditions as may be imposed by the board, or may affirm his removal. The findings of the board shall be certified to the appointing officer and shall forthwith be enforced by such officer."

[6]By full scale evidentiary hearing we would normally contemplate a hearing in which the city would present its evidence of the charges and the employe would have the opportunity to cross examine and to present evidence refuting such charges. There is some implication in the chief of police's notice to petitioner that a full scale hearing was not contemplated and that the city did not intend to present testimony against petitioner. In this case such testimony was not necessary in light of petitioner's admissions. We do not here decide whether the procedure followed by the chief of police complies with the city charter provisions requiring a hearing or satisfies constititutional requirements.

■ Petitioner also makes the following assignment of error:

> "The Board and the Court on review erred in finding that the Chief's interpretations of the rules in question, the violation of which resulted in Plaintiff's termination, were those of a reasonable person acting in good faith."

Under this assignment we do not reach the question whether the chief's interpretations were correct. There was substantial evidence in the record for the board to conclude that he acted in good faith.

■ Finally petitioner contends that the discipline was not commensurate with the violations. The discipline imposed was within the discretion of the appointing authority and is not subject to judicial review.

Affirmed.

**THORNTON, J.,** specially concurring.

I concur in the result but for different reasons.

While I am in agreement with much of the majority opinion, I must disagree with its reasoning in some respects. In addition, I consider it incomplete in that it does not deal with several key issues presented in plaintiff's assignments of error. The majority seems to be saying that this is unnecessary because plaintiff admitted the acts charged. This conclusion simply does not follow in my view. This is readily apparent, I believe, from a reading of plaintiff's assignments of error.

These are matters of considerable public importance and affect a number of public employes. In order to properly decide this case, as well as settle these issues for the future, this court should resolve the following questions:

(1) Was plaintiff denied "constitutional protections relating to continued employment" because under § 4-112 of the Charter of the City of Portland he was never afforded a "de novo administrative review of the

facts, an impartial tribunal reviewing of the facts, and * * * findings of fact and conclusions of law prior to termination"?

(2) Were the procedures for dismissal provided by § 4-112 of the charter unconstitutional because of (a) the lack of a de novo administrative hearing by an impartial tribunal and (b) the limitation placed on the scope of administrative review?[1]

(3) Was employer's interpretation of the rules reasonable and in good faith?

As I see it the hearing before the chief of police was a pretermination hearing and substantially met the minimum standards of due process subsequently announced in *Tupper v. Fairview Hospital,* 276 Or 657, 556 P2d 1340 (1976). I cannot agree, however, that it also constituted a full scale, evidentiary post-termination hearing as that term was referred to and used in *Tupper. See also, Arnett v. Kennedy,* 416 US 134, 94 S Ct 1633, 40 L Ed 2d 15 (1974); *Papadopoulos v. Bd. of Higher Ed.,* 14 Or App 130, 511 P2d 854, Sup Ct *review denied* (1973), *cert denied* 417 US 919 (1974); *Gunsolley v. Bushby,* 19 Or App 884, 529 P2d 950 (1974).

In short, it is my conclusion that the above questions should be answered by this court and that the answers should be as follows:

 (1) No;

 (2) No; and

 (3) Yes.

Summarizing, I would hold, in addition to the majority's reasons, that § 4-112 is constitutional as indicated above; plaintiff's conduct constituted violations of the rules relating to (a) acceptance of gifts and

---

[1]Where, as here, there is no dispute as to the facts, we need not consider plaintiff's contention that § 4-112 of the Charter of the City of Portland is also unconstitutional in that it places the burden of proof of wrongful dismissal on the discharged employe. Where the facts are not in dispute the burden of proof becomes immaterial.

(b) release of confidential information; there was substantial evidence in the record from which the chief of police could reasonably conclude that plaintiff violated the two rules in question; and plaintiff's dismissal was valid and according to constitutionally adequate procedures.