Argued March 23, reversed and remanded August 20,
appellant's reconsideration and respondents' reconsideration
denied September 25, respondents' petition for review and
appellant's petition for review denied October 23, 1979

SHERRIS,
*Appellant, v.*
CITY OF PORTLAND, et al,
*Respondents.*
(No. A7608-10989, No. 11019)
599 P2d 1188

Robert D. Durham, Eugene, argued the cause for appellant. With him on the briefs were Kulongoski, Heid, Durham & Drummonds, Eugene.

E. Pennock Gheen, Portland, argued the cause for respondents. With him on the brief were Hershiser, Mitchell, Mowery & Davis, and Michael A. Lehner, and Donald E. Murray, Portland.

Before Thornton, Presiding Judge, and Gillette and Campbell, Judges.

GILLETTE, J.

## GILLETTE, J.

This is an employment termination case. Plaintiff, a veteran police officer, challenges by a complaint for declaratory judgment the constitutional adequacy of the pretermination and post-termination hearings given him by his employer, the City of Portland.[1] He seeks a declaration of his legal rights, reinstatement and damages. The trial court granted defendants' motion for summary judgment. We reverse.

In April, 1975, the Internal Affairs Division (IAD) of the Portland Police Bureau conducted a special investigation into the possibility of corruption in the police department involving one James Liming, a civilian who appeared to have given stolen property to members of the Bureau. In connection with the investigation, plaintiff filed a written report on April 23 in which he stated that he had borrowed a radio scanner from Liming but had returned it to him. Plaintiff made the same statement in an oral interview with IAD officers on the morning of April 30, 1975. That afternoon, however, plaintiff discovered the radio scanner in his locker but, apparently out of nervousness and apprehension, did not immediately report this to the IAD officers. On the afternoon of May 6, plaintiff was again interviewed by IAD officers and again told them that he had returned the scanner to Liming, although admittedly by that time he knew he had not done so. That same evening plaintiff informed the IAD officers who had interviewed him that he had found the scanner in his locker and had not returned it.

A week later, on May 13, 1975, plaintiff was notified that he was to appear at a disciplinary hearing before Police Chief Baker to consider charges

---

[1] Plaintiff also claims that, during the course of the investigation of the charges against him prior to his discharge, investigating officers deprived him of rights accorded him by the Police Bureau Regulations. While this may be so, we perceive no significant connection between the alleged violation of plaintiff's rights and any due process protection to which he is entitled.

placed against him. The notice charged plaintiff with a total of 5 instances of misconduct in violation of three separate Police Bureau rules.

The hearing before the chief took place with plaintiff and his lawyer present. Plaintiff was informed of the charges against him and was given an opportunity to defend himself. Plaintiff denied every charge except that he acknowledged that he had lied during the May 6 afternoon interview when he told the IAD officers that he had returned the scanner.

On May 20, 1975, plaintiff was sent a written notice signed by the Mayor which stated that he had been found in violation of the three specified Police Bureau rules on the five occasions as charged. He was dismissed from his position.

Plaintiff appealed his discharge to the Portland Civil Service Board (PCSB). The PCSB found no evidence to support four of the five charges but, with regard to the fifth charge, found that plaintiff had been untruthful during the May 6 interview and affirmed the dismissal.[2]

---

[2] The procedural history of this case is somewhat more entangled than this discussion suggests and is brought to light by way of its inclusion in the parties' memoranda in support of and in opposition to defendant's motion for summary judgment.

Plaintiff had been charged with violation of the Standard of Conduct Rule and the rule on Gifts during the year of 1974, and of violating the Untruthfulness Rule on three occasions in 1975. The PCSB found evidence to support only the charge of untruthfulness during the May 6, 1975, interview. The PCSB worded its finding incorrectly:

"His untruthfulness on that occasion reasonably justifies his termination for violation of the Standard of Conduct and the Truthfulness rules* * *"

Plaintiff then filed a petition for a writ of review in Multnomah County Circuit Court. The circuit court judge pointed out that plaintiff had never been charged with a violation of the Standard of Conduct Rule in 1975 and that, accordingly, PCSB had misconstrued the record. He also found that there was no evidence in the record which would support a finding that plaintiff had violated either the Standard of Conduct or the Gifts rule in 1974, but agreed the record was clear that plaintiff did violate the Untruthfulness Rule on May 6, 1975. The court remanded the case to PCSB to determine whether the discharge was properly imposed in good faith for

Although not addressed by the parties, a threshhold issue is presented as to the jurisdictional basis for our review of this case.[3] Specifically, the question presented is whether a declaratory judgment proceeding is the appropriate vehicle for plaintiff to have used in challenging the constitutional adequacy of the procedures followed by the city upon his discharge.

The short answer, under the Supreme Court's opinion in *Brooks v. Dierker*, 275 Or 619, 552 P2d 533 (1976), is "probably not." The issue in *Brooks* was whether a declaratory judgment was the proper method of obtaining judicial review of the action of a county government in revoking plaintiff's sewage disposal permit. In holding that it was not, the court expressed a strong policy preference for use of the writ of review:

> "The writ of review is an economical, expeditious and procedurally simple remedy which allows the reviewing court to examine the record made in the proceeding below. It has the beneficial effect of limiting the scope of review to those matters which were brought to the attention of the lower tribunal and passed upon by that body. In contrast, a declaratory judgment proceeding presumes to examine the controversy de novo, and it allows the parties to present new evidence, to raise new issues, and to relitigate the entire proceeding. Such a method of review fails to give proper regard to the actions of local governing bodies. it is also undesirable from the

plaintiff's single instance of untruthfulness on May 6, 1975. Upon remand, PCSB determined that it was. The record does not indicate what took place with respect to the writ of review proceeding after PCSB issued its order upon remand.

The PCSB order upon remand was dated October 17, 1976. The complaint for declaratory judgment was filed August 6, 1976. A motion to consolidate the writ of review proceeding with the declaratory judgment proceeding was denied on August 23, 1976. Since this is the complete history of this case so far as it can be determined from information before us, we are not presented with a possible *res judicata* bar based upon some final, unappealed disposition of the writ of review case. So far as this record would indicate, that proceeding is still pending in Multnomah County.

[3] *See City of Hermiston v. ERB,* 280 Or 291, 293, 570 P2d 663 (1977).

standpoint of conserving judicial resources." 275 Or at 625.

The court concluded that the writ of review procedure would have been the appropriate remedy.

Turning to the present case, it appears that the record made before PCSB, which would also be the record in the writ of review proceeding, would have been sufficient for the examination of all issues which plaintiff wishes to have examined here. We say "appears" because the record in this declaratory judgment case consists solely of the trial court file, which includes the affidavits and memoranda of the parties supporting and opposing summary judgment. However, these memoranda include excerpts from the PCSB hearing and PCSB findings and indicate that the hearing encompassed the full range of factual data from which the legal issues raised by plaintiff can be resolved. There does not appear to have been a need to take additional testimony or make a new record. As a consequence, a writ of review would have been adequate. *Brooks v. Dierker, supra.*

We think, however, that dismissal of these proceedings would, under the peculiar procedural facts of this case, be counter-productive to the goal of judicial efficiency espoused in *Brooks.* There was, at the time this declaratory judgment action was initiated, an ongoing writ of review proceeding dealing with the same questions.[3a] There was a timely motion to consolidate this case with the writ of review proceeding, which request was denied. The practical effect of the amalgamation of the two proceedings would have been to bring this case before this court in substantially the same posture it now enjoys. We see no merit in dismissing this proceeding, thereby requiring the reactivation of the writ of review proceeding and requiring further delay before the same issues are back before us. Both parties are apparently satisfied that the record made in the declaratory judgment proceeding is

[3a] *See* fn 3, *supra.*

[550]

sufficient to permit us to dispose of the pertinent legal issues. We agree that it is. We therefore deal with the case on the merits.[4]

The dispute in this case centers on what procedural protections should have been accorded plaintiff both prior and subsequent to his dismissal. Plaintiff makes elaborate claims with regard to the degree of process due him prior to his dismissal. He argues that he was entitled to an extensive hearing replete with trial-type procedures, including the opportunity to confront and cross examine witnesses, particularly the IAD officers who had filed the charges against him.[5]

The settled law is to the contrary. The amount of process which is due public employes who are being discharged for cause is determined by *Tupper v. Fairview Hospital*, 276 Or 657, 556 P2d 1340 (1976) and *Hammer v. OSP*, 283 Or 369, 583 P2d 1136 (1978). In fact situations similar to the case before us, *Tupper* and *Hammer* held that, in addition to a "full post-termination hearing," the employe should, prior to

---

[4] *See Graziano v. City Council of Canby*, 35 Or App 271, 581 P2d 552 (1978), where, although the wrong remedy was invoked, we still reached the merits on one of the issues.

[5] In response, defendant contends that plaintiff's admission that he lied during the May 6th interview dispenses with the need for procedural protection. Defendant relies on *Orr v. Civil Service Board,* 30 Or App 739, 567 P2d 1076 (1977) for this proposition. *Orr* held that where, in the pretermination hearing, the discharged policeman had admitted the facts relevent to the charges filed against him, a full-scale adversary hearing was not required by due process. *Orr* is distinguishable on its facts in that, in the case before us, plaintiff has admitted only one of the five charges filed against him.

The decision in *Orr* is incorrectly premised on *Codd v. Velger*, 429 US 624, 97 S Ct 882, 51 L Ed 2d 92 (1977). In *Codd*, the United States Supreme Court held that the failure to give a former non-tenured city policeman a termination hearing did not violate the due process clause because the officer had not asserted that the allegedly stigmatizing information in his personnel file that resulted in his dismissal was substantially false. *Codd*, however, is specifically addressed to a *non-tenured employe.* To the extent that *Orr* extends the holding in *Codd* to a situation involving a tenured employe, it runs afoul of *Papadopoulos v. Bd. of Higher Ed.*, 14 Or App 130, 511 P2d 854, S Ct *rev den* (1973), *cert den* 417 US 919 (1974) and *Tupper v. Fairview Hospital*, 276 Or 657, 556 P2d 1340 (1977), and is of doubtful precedential value.

dismissal, be given notice of the charges and possible sanctions and, at minimum, an informal opportunity to respond to the charges. We explained in *Ashman v. C.S.D.,* 37 Or App 865, 588 P2d 665 (1978), that the purpose of the informal hearing is to give an about-to-be-fired employe the opportunity to appear before his or her boss in an attempt to explain why he or she should not be fired.

■ The pretermination hearing before Police Chief Baker satisfied the requirement of an informal opportunity to respond to the charges. Plaintiff further argues, however, that he was not given adequate notice of the charges against him and the possible sanctions which might be imposed. Plaintiff had been given a memorandum from Police Chief Baker dated May 13, 1975, which requested that plaintiff appear at the "disciplinary hearing" for consideration of the charges spelled out in the memorandum. The memorandum also stated that plaintiff could appeal to the PCSB "if demoted, discharged or suspended." This memorandum fairly apprised plaintiff of the charges against him and the possible sanctions. We conclude that the pretermination procedures used in this case satisfied the requirements of due process.

Plaintiff next challenges the adequacy of his post-termination hearing and asserts that the hearing he received before the PCSB is not the "full post-termination hearing" envisioned by *Tupper.* City of Portland Charter Section 4-112 sets out the provisions for employee dismissal and post-termination hearing:

> *"Section 4-112. Removals and Investigations.* No employe in the classified civil service who shall have been permanently appointed under the provisions of this chapter *shall be removed or discharged,* or in the case of the members or officers of the bureau of police, demoted, *except for cause*, a written statement of which in general terms shall be served upon him and a duplicate filed with the board. Such removal or discharge may be made without any trial or hearing.

In the bureau of police removal, discharge or demotion may be made only after a hearing before the mayor, chief of police, or a discipline committee of superior officers appointed as may be provided by ordinances, said hearing to be based on written charges filed by the mayor, chief of police, inspector of police, or other superior officer of the bureau of police. Any employe so removed or demoted may within ten days from his removal or demotion file with the board a written demand for investigation. If such demand shall allege, or, if it shall otherwise appear to the board that the discharge or removal, and in the case of the bureau of police, demotion, was for political or religious reasons, or was not in good faith, for the purpose of improving the public service, the matter shall forthwith be investigated by or before the board, or by or before some officer or board appointed by the board to conduct such investigation. The investigation shall be confined solely to the determination of the question of whether such *removal or discharge, or, in the case of the bureau of police, demotion, was or was not for political or religious reasons, or was or was not made in good faith for the purpose of improving the public service. The burden of proof shall be upon the discharged employe. On such grounds the board may find that the employe is entitled to reinstatement upon such terms or conditions as may be imposed by the board, or may affirm his removal. The findings of the board shall be certified to the appointing officer and shall forthwith be enforced by such officer.* (Emphasis added.)

Plaintiff points out that under Section 4-112 the burden of proof is placed on the discharged employe to show that his discharge was motivated by political or religious reasons and was not made in good faith for the purpose of improving the public service. In other words, plaintiff has the burden of *disproving* "cause." We agree that such a procedure sounds inconsistent with a tenured employe's protected claim of entitlement to continued employment absent sufficient cause for discharge. However, we note that the primary concern of due process is that the discharged employe be granted a hearing "at meaningful time and

[553]

in a meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S Ct 1187, 14 LEd 2d 62 (1965). We do not regard the placement of the burden of proof at the PCBS hearing as being so crucial as to make it an element of due process. As stated by the U. S. Supreme Court in a different context:

> "Outside the criminal law area, where special concerns attend, the basis of the burden of persuasion is normally not an issue of federal constitutional moment." *Lavine v. Milne*, 424 US 577, 585, 96 S Ct 1010, 47 LEd 2d 249 (1976).

■■ Plaintiff also objects to the standard of review used by PCSB which plaintiff claims is essentially a "substantial evidence" review and not, as he would prefer, a "*de novo* one." *De novo* means "heard anew." This case has not been heard of old. The hearing before PCSB was the first opportunity to adduce the pertinent facts. That was done; due process is satisfied. If, however, plaintiff is contending that he is entitled as a matter of due process to have the firing decision itself made by the hearing body (in this case, the PCSB), we reject that suggestion. The hearing body's function is to establish what the facts are and, then, to rule on whether the action taken was proper in light of whatever statutory standards concerning discharge which may exist. *See Thompson v. Secretary of State*, 19 Or App 74, 526 P2d 621 (1974). A hearing on the firing of a public employe which does this fully comports with due process. *Fairview Hospital v. Stanton*, 28 Or App 643, 560 P2d 667 (1977).

■■ Plaintiff finally argues that PCSB "did not and probably could not" review the evidence for cause for discharge. Plaintiff claims that, under Charter Section 4-112, PCSB cannot review for "cause". There is language in the *City of Portland v. Garner*, 226 Or 80, 358 P2d 495 (1961) which might be taken to suggest this conclusion:

> "Under [Portland Charter, Section 4-112] the Civil Service Board should not consider whether cause existed in fact except as it may show a purpose other

than improvement of the public service." 226 Or at 91.

We regard *Garner* as being overruled *sub silentio* by *Tupper* and *Hammer.* Plaintiff is a public employe who, under the terms of Charter Section 4-112, cannot be discharged *except* for cause. It follows that review of the matter by PCSB is for "cause." Because, however, *Garner* was the last statement by the Supreme Court concerning § 4-112, and because our review of the PCSB findings does not definitively establish that the PCSB did review for "cause," we cannot conclude that its finding that the discharge was made in good faith for the purpose of improving public service is the equivalent of a finding of cause. It may or may not have been. Under the circumstances we must remand to permit the PCSB to make the determination under the appropriate standard if it has not already done so. *Cf. Palen v. State Bd. of Higher Education*, 18 Or App 442, 525 P2d 1047 (1974).

The granting of defendant's motion for summary judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.